## MATTER OF YOO

### In DEPORTATION Proceedings

### A-10751071

*Decided by Board October 30, 1963*

A lawful permanent resident, upon return to the United States in July 1959 following a 4-hour absence to Mexico on a sight-seeing trip did not make an entry [*Rosenberg* v. *Fleuti*, 371 U.S. 449] upon which to predicate a ground of deportation arising out of a conviction of a crime involving moral turpitude commited within 5 years after entry. See *Matter of Cardenas-Pineda*, Int. Dec. No. 1295.

CHARGE:

Order:  Act of 1952—Section 241(a)(4) [8 U.S.C. 1251(a)(4)]—Convicted of crime committed within 5 years of entry, to wit, murder in the first degree.

An order entered by the special inquiry officer on July 23, 1963 directs the respondent's deportation to the Republic of Korea on the charge that he has been convicted of a crime involving moral turpitude committed within five years after entry and sentenced to confinement therefor for a year or more, to wit, first degree murder (8 U.S.C. 1251(a)(4)). The case has been certified for final decision by the Board of Immigration Appeals.

The record relates to a native and citizen of the Republic of Korea, male, unmarried, 23 years of age, who was admitted to the United States for permanent residence through the port of Seattle, Washington on July 7, 1956. The evidence establishes and the respondent admits that he was convicted in the Circuit Court for the Eleventh Judicial Circuit, Dade County, Miami, Florida, of first degree murder and sentenced to life imprisonment on April 18, 1963. The respondent also admits that in July of 1959 he went on a sight-seeing trip to Mexico for approximately four hours accompanied by his father and another person.

The case has been certified for an interpretation of the term "entry" in light of the Supreme Court decision in the case of *Rosenberg* v. *Fleuti*, 374 U.S. 449, 10 L. ed. 2d 1000, June 17, 1963. The Supreme

Court in the *Fleuti* case had before it the question of whether a resident alien who returned to the United States in 1956 after a brief visit to Mexico and at that time was excludable under section 212(a) of the Immigration and Nationality Act (8 U.S.C. 1182(a)) would be subject to deportation by reason of an "entry" within the meaning of section 101(a)(13) of the Act (8 U.S.C. 1101(a)(13)).[1] The Court construed the "intent" exception to the definition of the term "entry" as meaning an intent to depart in a manner which can be regarded as meaningfully interruptive of the alien's permanent residence. The following factors were stated by the Court as indicative of such an intent: (1) the length of time the alien was absent from the United States; (2) the purpose of the alien's visit abroad is not contrary to some policy reflected in our immigration laws; and (3) was it necessary for the alien to procure travel documents in order to make the trip.

The evidence with regard to the nature of respondent's short visit to Mexico was fully developed by the trial attorney. The respondent testified ". . . we entered Mexico just visiting a different country, sightseeing, sir." When questioned as to whether he knew that he was leaving the United States and entering Mexico, the respondent replied ". . . the only answer I can give you . . . in entering a different country. No, I didn't have the intention in my mind at that time." (pp. 13 & 14) The respondent subsequently testified that he knew that he was entering a foreign country when he visited in Mexico (p. 16); that he had an "identification card" which said "I was allowed either in Mexico or Canada, possibly three months with this card" (p. 12); and that he went through inspection when he entered and departed from Mexico (p. 15).

The special inquiry officer, referring to the factors enumerated by the Supreme Court as indicative of an "intent" to depart in a meaningful manner, concedes that the length of the respondent's absence in Mexico was short (four hours); that the purpose of the respondent's visit to Mexico was legitimate, namely, not contrary to some policy reflected in our immigration laws and that it was an innocent, casual and brief excursion from the United States. The special inquiry

---

[1] That portion of section 101(a)(13), Immigration and Nationality Act (8 U.S.C. 1101(a)(13)) pertinent to this decision reads as follows: "The term 'entry' means any coming of an alien into the United States, from a foreign port or place or from an outlying possession, whether voluntarily or otherwise, except that an alien having a lawful permanent residence in the United States shall not be regarded as making an entry into the United States for the purposes of the immigration laws if the alien proves to the satisfaction of the Attorney General that his departure to a foreign port or place or to an outlying possession was not *intended* or reasonably to be expected by him or his presence in a foreign port or place or in an outlying possession was not voluntary: . . ." (Emphasis supplied.)

officer concludes, however, that the respondent's departure was meaningfully disruptive of his resident alien status because the respondent "knew he was required to have some form of travel document or identification in order to come back to the United States[2] . . . and he (respondent) knew that he had to be inspected by immigration officers on his return to this country." (pp. 4 & 5, special inquiry officer opinion). The special inquiry officer distinguishes *Fleuti* on the basis of this reasoning and finds that the respondent did effect an "entry" within the meaning of section 101(a)(13) of the Act when he last entered the United States at Nogales, Arizona in July of 1959.

Contrary to the special inquiry officer, we are unable to distinguish respondent's case from the Supreme Court holding in *Rosenberg* v. *Fleuti* (*supra*). Knowledge of the fact that a travel document is required for presentation to an inspecting immigration officer upon return to the United States is not the *sine qua non* of the Supreme Court's reference to travel document requirements as indicative of an "intent to depart in a manner which can be regarded as meaningfully interruptive of the alien's permanent residence." When the Supreme Court in stating the several factors relevant to a meaningful departure said "whether the alien has to *procure* any travel documents in order to make this trip" they meant that the procurement of the document is the key to an "intent" to depart "meaningfully" because as the Supreme Court expressed it *"the need to obtain such items might well cause the alien to consider more fully the implications involved in his leaving the country."* (Emphasis supplied.) Furthermore, under the regulations then prevailing[3] Fleuti was required to present his alien registration receipt card (Form I-151) to effect a reentry when he returned from Mexico in August of 1956 and we presume he had one in his possession for this purpose. As in the case of this respondent Fleuti did not have "to procure any travel documents in order to make his trip" to Mexico (10 L. ed. 2d at p. 1009).

This respondent has had an alien registration card since his initial entry for permanent residence in 1956. He did not have to make a formal application for a travel document authorizing his reentry following a border crossing into Mexico because under 8 CFR 211.1 (*supra*[2]) his alien registration card was sufficient for this purpose. According to his testimony the document he presented upon his return to the United States (alien registration card) said on its face that the

---

[2] 8 CFR 211.1 reads in part as follows: A valid unexpired immigrant visa shall be presented by each arriving immigrant alien except an immigrant who . . .(b) is returning to an unrelinquished lawful permanent residence after a temporary absence abroad (exceptions not pertinent here) not exceeding one year and presents a Form I-151 Alien Registration Receipt Card duly issued to him . . .

[3] 8 CFR 211.11 as revised May 15, 1956

holder thereof "was allowed either in Mexico or Canada, possibly three months . . ." (p. 12) It cannot be said under these circumstances that the respondent's casual and brief excursion beyond our borders was "intended" as a departure disruptive of his resident alien status. Accordingly, the respondent did not make an "entry" within the meaning of section 101(a)(13) of the Immigration and Nationality Act (*supra* [1]) when he returned to the United States following a visit in Mexico of four hours' duration in July of 1959. The charge laid under section 241(a)(4) of the Immigration and Nationality Act (8 U.S.C. 1251(a)(4)) cannot be sustained because the respondent has not been convicted of a crime involving moral turpitude committed within five years of his only "entry" into the United States, namely, his entry for permanent residence on July 7, 1956. An appropriate order will be entered.

**Order:** The order entered by the special inquiry officer on July 23, 1963 directing the alien's deportation to the Republic of Korea on the charge stated in the order to show cause dated April 25, 1963 is hereby withdrawn.

*It is further ordered* that the proceeding under the said order to show cause be and the same is hereby terminated.